**UNITED STATES of America,
Appellee,**

v.

**Hipolito VEGA, Appellant.
No. 1025, Docket 71-1343.**

United States Court of Appeals,
Second Circuit.

Argued June 30, 1971.

Decided Aug. 30, 1971.

---

John W. Nields, Jr., Asst. U. S. Atty., New York City, (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., Jay Horowitz, Asst. U. S. Atty., New York City, on the brief), for appellee.

Vincent L. Broderick, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, and Leonard S. Baum, New York City, of counsel), for appellant.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

The defendant Hipolito Vega appeals from a judgment of conviction, entered after a jury trial, for violation of 47 U.S.C. § 508(a)—unlawfully accepting money for the broadcasting of records over radio station WBNX without disclosing this fact to the station (sometimes referred to as "payola")—and 18 U.S.C. § 1621—perjury for falsely denying such receipt.

A somewhat unusual situation arose before verdict during the jury's deliberations. The appeal primarily is based upon this incident.

The trial was of short duration (three hours).. Two government witnesses testified as to payments made to Vega, a third told of an admission by Vega that he had received money to play records. The perjury count was based upon Vega's denial under oath before the Federal Communications Commission in June 1966 of having received any money.

After the case had been submitted to the jury and after some two hours of deliberation, the jury sent to the Court a message reading, "Sorry. It seems that we cannot come to an agreement. Foreman" (Court Exh. 1). It being late Friday afternoon, the Court excused the jury until Monday morning. At the

opening of Court on Monday, defense counsel, anticipating that the Court would give the so-called *Allen* charge, said, "I believe the *Allen* charge would be a great disservice to the possible defense here." The Court did not agree and stated, "We would only impanel another jury forthwith." To the charge as proposed defense counsel said, "I have no objection to that charge, if your Honor please, none whatsoever." The additional charge was not productive of a verdict.

At noon a second note was received, reading, "Your Honor. Sorry to say that we cannot come to a definite decision. We have stopped deliberating as we cannot come to a final decision. Foreman" (Court Exh. 2). The Court again urged the jury to reach a decision at which point Juror number 12 attempted to address the Court but was told that any communication should be by note. A few minutes later a third note was received, reading, "Your Honor. I am the primary hold-out. I cannot change my opinion in good conscience and feel that to do so under pressure would violate my oath as a juror. I respectfully request that the jury be dismissed. Ralph Hoag." The Court read the message to counsel and said, "You have one guy holding out. I don't know which way he is. Do you want to accept a jury verdict of 11. I don't know which way they stand." Then followed colloquy between Court and defense counsel, critical to this appeal. When defense counsel, who was both experienced and skilled in the strategy of the courtroom asked for and was granted time to discuss the matter with his client, the Court pointed out that there might be other holdouts and asked whether the defendant might take a 10 to 2 verdict, to which defense counsel replied:

"Mr. Solomon: My feeling very bluntly, as an old hand, Judge, is that some of the others are definitely, to my mind, more simpatico to defendants, so I don't think that I want to— I will ask the defendant, but I don't think I want to.

"The Court: It is your choice."
After a conference with defendant and his wife, counsel advised the Court "We will only accept a unanimous verdict." The defendant then talked with his wife, after which the following colloquy occurred:

"The Court: Take a verdict of ten jurors, agreement of ten?

"Mr. Solomon: 11. If he says 'I am holding out.'

"The Court: He says 'I am the primary one.'

"Mr. Solomon: Let's see if we can get a jury of 11.

"The Court: Will you take that?

"Mr. Solomon: Yes.

"The Court: Is that agreeable?

"Mr. Solomon [apparently addressing the defendant]: Would that be agreeable to you? I suggest you do it. You are not going to get a better trial. I am telling you right now.

(Pause.)

"Mr. Solomon: Yes, 11, yes.

"The Court: All right, bring the jury back. I will dismiss this one juror and tell the others.

"Mr. Solomon: Right, absolutely and we will gamble on the rest. Absolutely.

"The Court: All right."

Mr. Hoag was thereupon excused and the jury of 11 continued its deliberations. Another note [1] was then received from a juror but before any action was taken on it, a verdict was reached. Defense counsel said, "I understand that you are to disregard the note. They have a verdict." A discussion at the bench and off the record ensued after which the Court addressed the jury. "The Court: I understand you have asked me to disregard the note that was sent earlier. Is that correct?" "The

---

1. "I am under the same opinion. May I be excused? Barbara Schulz."

Foreman: That is correct." No objection was taken by defense counsel to proceeding and the Foreman announced the verdict of guilty on both counts.

The conclusions to be derived from this record are clear beyond peradventure. The defendant was represented by competent counsel. Counsel during the selection of the jury and during the trial had an opportunity to select and appraise the jurors selected as best qualified to react favorably to the cause of his client. When the "holdout" crisis arose, the Court gave counsel every opportunity to exercise his courtroom judgment as to further proceedings. Counsel conferred with the defendant and the defendant with his wife. Counsel was unwilling to accept less than a unanimous verdict but definitely was willing to accept a jury of 11. And, as measured against some other jury on a second trial, it was obviously his considered judgment that in courtroom parlance the jury "looked good" to him.[2]

■ Now on appeal the defendant argues that he had a statutory and constitutional right to a unanimous verdict which could not be waived and charges the Court with error in accepting what he now describes as a "non-unanimous verdict."

The many cases and law review articles cited upon the subject of "Waiver of Jury Unanimity" are not applicable to the facts here presented. The defendant here did not waive (his counsel clearly refused to waive) his right to a unanimous verdict. He did have a unanimous verdict. His waiver, knowingly and advisedly given, was of his right to a jury of 12. Both Rule 23(b) of the Federal Rules of Criminal Procedure and Rule 48 of the Federal Rules of Civil Procedure give to the parties the right to stipulate to a jury of less than 12, at any time before verdict. For this Court to hold otherwise would be to deprive a defendant of the opportunity to follow the advice of counsel of his own choice in making a critical decision. Defendant and his counsel probably believed that he was going to obtain a favorable decision from that particular jury and upon his agreed-upon jury of 11 he was willing to "gamble." No statutory or constitutional error can be found in his exercise of these rights.

■ In retrospect the defendant now believes that he was coerced into his waiver. Again the many other cases cited to support the requirement of knowing and voluntary waiver are inapplicable. Our decision must depend upon the facts of *this* case. The defendant's claim of coercion is based upon "the threat of the trial judge to re-try this case immediately." Counsel now says that "It is clear that a consideration of defense counsel in recommending a non-unanimous verdict was the threat by the trial judge to re-try this case immediately" (Applt's Br. p. 21). But counsel's position was quite positive that "We will only accept a unanimous verdict" and equally positive that he was willing to accept a jury of 11. The fact, now asserted, that the defendant was not "sophisticated in criminal procedure" is scarcely a persuasive argument. Because of this very fact defendants usually retain, as here, skilled counsel to protect their rights. Strong argument should be made by appellants but it should not be distorted. Nothing in the record supports the statement that the trial judge "twice suggested less than a unanimous verdict upon penalty of an immediate re-trial." The right to make a motion within seven days in the event that the jury is discharged without having returned a verdict, Fed.R.Crim.P. 29(c), did not arise. There was no "hung" jury. Had the jury been discharged without reaching a verdict *and* had the trial judge started a new trial

---

2. The defendant and his counsel were apparently aware of the fact that of three others, indicted and tried on similar "payola" charges, two had been acquitted and one convicted, and that upon a retrial the Government would probably call an additional witness then en route from Florida (Tr. pp. 5–6).

within less than seven days *and* had objection thereto been made by defense counsel, a different situation might have arisen. But this state of facts is entirely hypothetical. Rule 29(c) provides that the motion for judgment of acquittal *may* be made "within 7 days" or "within such further time as the court may fix during the 7-day period." Had the trial judge abused his discretion, this would have been a proper appellate point but, in a case of such brief duration with no legal or factual problems of a complex character, it was logical for the Court, while the witnesses were available and counsel prepared, to endeavor to dispose of the case. This can hardly be called coercion.

Despite the Court's expressed desire for speed, there is ample proof in the record that defense counsel, in the interest of his client and in the exercise of his experienced judgment, elected with his client's consent to proceed with the jury he had selected and faced during the trial.

Lastly appellant's claim of error in refusing to postpone the trial because of the government's tardy filing of its bill of particulars does not constitute a ground for reversal. The revelation of Maestre and Orta as the payors of "payola" to Vega was not a surprise to Vega or his counsel. Maestre was named in the first count of the indictment. Furthermore, defense counsel knew that Vega was the person to whom it was asserted that Orta had made payments, first because counsel recognized that naming Baez as the recipient "was a typographical error on the government's part" and second, because Orta's 3500 material which related to Vega had been given to counsel on a prior trial. No prejudice to Vega resulted from the delay in delivery of the bill.

Vega does not question the conviction on the perjury count on the merits. The same claim of error with respect to the jury would apply and for the reasons previously stated is rejected.

Judgment affirmed.