**UNITED STATES of America, Appellee,**

v.

**Freddy PACHAY, Defendant-Appellant.**

**No. 1027, Docket 82–1365.**

United States Court of Appeals,
Second Circuit.

Argued March 17, 1983.
Decided June 27, 1983.

Daniel H. Murphy, II, Pelham Manor, N.Y., for defendant-appellant.

Warren Neil Eggleston, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., Andrew J. Levander, Walter P. Loughlin, Asst. U.S. Attys., New York City, on the brief), for appellee.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

The issue on this appeal is whether a defendant in a federal criminal trial can waive his right to a unanimous jury verdict. Appellant contends that his narcotics conviction entered on September 24, 1982, in the District Court for the Southern District of New York (John E. Sprizzo, Judge) should be reversed because the District Court accepted a jury verdict of guilty by a vote of 11 to 1 after the defendant and the prosecution had agreed to a non-unanimous verdict. Because this procedure violated Rule 31(a) of the Federal Rules of Criminal Procedure, we are obliged to reverse and order a new trial.

## I.

Freddy Pachay was one of two defendants named in a three-count indictment charging distribution of cocaine and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841, 846 (1976). On August 2, 1982, after his co-defendant pled guilty to one count, Pachay went to trial alone. The jury began deliberations at 12:30 p.m. on August 4. Over the next two days, the jury sent Judge Sprizzo two notes indicating that they were deadlocked. Judge Sprizzo responded to both notes by encouraging the jury to continue their efforts and to try to reach a unanimous verdict. At 5:25 p.m. on Friday, August 6, the jury sent the following note:

A difference of opinion of a single juror now keeps one jury only a hair's breadth away from a decision. Glaring tempers, however, threaten to make the achievement of unanimity impossible if we continue deliberation in today's overheated condition. Unless we wish to capitulate to a mistrial, the majority of the jury would appreciate the chance to disband for today and reassemble tomorrow morning [Saturday]. In addition, if you decide to allow a resumption of deliberation on Monday, would you please instruct all members of the jury of the penalties for failing to appear for deliberations.

The Court, defense counsel (Mr. Joy), and the prosecutor (Mr. Eggleston) then had the following exchange:

The Court: The jury is impatient to leave one way or the other.

Mr. Joy, is he a gambling man? Are you a gambler?

Mr. Joy: This is about the toughest decision I have made since I have been here.

The Court: It depends upon whether Mr. Pachay is a gambling man. The jury has indicated that they are not going to deliberate any more tonight regardless of what they do. Unless we are willing to go on an 11 to 1 basis, I have to make a choice as to whether to declare a mistrial—and that's a hard choice because, as somebody said, the jury is deliberating now and they have it down to one holdout and they don't know if the situation on Monday will improve because some of the people may not show up.

I will come back in five minutes. I am not going far away.

(Pause.)

Mr. Joy: Your Honor, the defendant is willing to go with 11.

The Court: And the government?

Mr. Eggleston: The government's position is if the defendant is fully advised of his rights the government will go with 11.

The Court: I want you to understand that you are entitled to a unanimous verdict of the jury, but like any right you can waive it, so long as your waiver is intentional and knowing.

Have you discussed it with Mr. Joy?

The Defendant: Yes.

The Court: You understand that whatever the jury verdict is you have waived your right to have a unanimous verdict of 12 jurors?

The Defendant: Yes.

The Court: I think that's sufficient for my purposes.

Does the government want to ask him anything else?

Mr. Eggleston: No, your Honor.

The Court: Tell the foreman that the parties have agreed to take a verdict of 11 on whatever it is.

Judge Sprizzo then recalled the jury and informed them that the parties had agreed to accept "a verdict of 11 jurors." The foreman reported that the jury had found Pachay guilty on all counts, and a subsequent poll revealed that of the 12 jurors all except Juror No. 10 agreed with the verdicts. On September 24, 1982, the District Court sentenced Pachay to a two-year term on one of the counts, to be followed by five years of probation on the remaining two counts.

Pachay now challenges the District Court's judgment on the ground that the jury failed to reach a unanimous verdict. Pachay argues that a defendant's right to a unanimous jury is not waivable in a federal court. Pachay grounds this argument on the Sixth and Seventh Amendments and on Rule 31(a) of the Federal Rules of Criminal Procedure. We consider it necessary to decide only whether Rule 31(a) should be understood to prohibit waiver of the unanimity requirement and, if so, whether a violation of the Rule requires reversal in this case.

## II.

There can be no doubt that Rule 31(a) establishes unanimity as a mandatory requirement in federal criminal trials. The Rule provides: "The verdict shall be unanimous." Though the text does not explicitly forbid waiver of unanimity, there are two strong reasons for giving the Rule that construction. First, the general practice of the drafters of the Criminal Rules was to authorize waiver in express terms whenever waiver of a mandatory requirement concerning the jury was to be permitted. Thus, Rule 23(a) permits waiver of trial by jury (with the consent of the Court and the Government), and Rule 23(b) permits waiver of the requirement that a jury comprise 12 persons (with the consent of the Court and all parties). *See also* Rule 5(c) (permitting waiver of preliminary examination); Rule 7(b) (permitting waiver of indictment); *cf.* Rule 12(f) (imputing waiver of defenses and objections required to be made before trial and not timely made).

Second, the intent of the drafters of Rule 31(a) not to permit waiver of unanimity is evident from the history of the Rule. The Advisory Committee's sixth draft, dated Winter 1942–1943, expressly permitted the parties to agree that a verdict may be returned by "a stated majority of the jurors," see 5 L. Orfield, *Criminal Procedure under the Federal Rules* § 31:2, at 117 (1967), and this provision was contained in the Committee's First Preliminary Draft (seventh Committee draft), dated May 1943. *Id.* at 118. The Committee received numerous comments opposing this provision and a similar provision permitting the parties to agree to a jury of less than twelve. One of the most telling criticisms came from Judge Merrill Otis of the Western District of Missouri. Judge Otis argued that permitting non-unanimous verdicts by agreement would undermine the integrity of the jury process. Moreover, he contended, such a rule would be unfair to a criminal defendant, who might feel coerced into agreeing to a suggestion of a non-unanimous verdict by the risk of prejudicial consequences if he refused to consent.[1] Presumably Judge Otis had

1. Because the legislative history of the Federal    Rules of Criminal Procedure is not widely avail-

in mind the risk that, in the event of conviction by a unanimous jury, the trial judge would impose a harsher sentence on a nonconsenting defendant, or at least that a defendant would fear such a consequence and agree to the suggested waiver to avoid incurring the judge's displeasure. In response to the criticisms of Judge Otis and others, the Committee deleted the provision for waiver of unanimity in its Second Preliminary Draft (eighth Committee draft), dated February 1944, though it retained the provision permitting agreement to a jury of less than 12. *Id.* at 120. The final version of Rule 31(a) reflects the Committee's deliberate decision to omit a provision for waiver of unanimity.

From a comparison of the text of Rule 31(a) with other Criminal Rules containing express waiver provisions and from consideration of the Rule's history, we conclude that the Rule does not permit waiver of the unanimity requirement, a conclusion reached by the three other circuits that have confronted the issue. *See United States v. Lopez,* 581 F.2d 1338, 1341–42 (9th Cir.1978); *United States v. Scalzitti,* 578 F.2d 507, 510–12 (3d Cir.1978); *Hibdon v. United States,* 204 F.2d 834 (6th Cir.1953); *see also United States v. Morris,* 612 F.2d 483, 488–89 (10th Cir.1979); *United States v. Gipson,* 553 F.2d 453, 456 n. 4 (5th Cir. 1977). Leading commentators are in agreement. *See* 8A *Moore's Federal Practice* ¶ 31.02[1], at 31–3 (2d ed. 1982); 3 C. Wright, *Federal Practice and Procedure* § 511, at 3–5 (2d ed. 1982).

The Government suggests that our prior decision in *United States v. Vega,* 447 F.2d

698 (2d Cir.1971), has already committed us to a contrary ruling. In *Vega,* a juror sent a note to the District Court during jury deliberations identifying himself and stating that he was the "primary hold-out," a characterization the District Judge took to mean that the other 11 jurors might not then be in agreement, *id.* at 700. With the consent of the defendant and the prosecution the District Court excused the juror and instructed the remaining 11 jurors to continue deliberations. Ultimately the remaining 11 found the defendant guilty, and we affirmed the conviction.

There is an undeniable similarity between *Vega* and the instant case. In both, 11 jurors found the defendant guilty, and, in both, one of the original 12 jurors thought him not guilty. But there are factual differences that have legal significance. The disagreeing juror in *Vega* identified himself, thereby permitting the parties to join in a request to excuse him and to avail themselves of the opportunity, explicitly accorded by Rule 23(b), to accept, at any time before the verdict, a jury of less than 12. In addition, and of great significance, after the one juror was excused the deliberations of the 11 remaining jurors continued for some time before they reached a verdict. In Pachay's trial, however, the holdout was not identified until after the verdict was returned, he was not excused, and the jury that returned the verdict was not a jury of 11 that deliberated as a group of 11 and returned a unanimous verdict, it was a jury of 12 that returned a non-unanimous verdict.[2]

---

able, we reproduce Judge Otis' comments:

> I think the *character* of the tribunal by which a man may be imprisoned and *how the tribunal functions* are things so fundamental that they should be determined by law and should be the same for all men. Rules 21(b) [predecessor of Rule 23(b)] and 29(a) [predecessor of Rule 31(a)] leave these matters to the decision of a man who often is the weakest, the most ignorant, the most unfortunate and the least well advised individual in the courtroom, that is, to the decision of the defendant. The mere fact that an accused person may be asked to consent to a majority verdict ... prejudices him, if he does not con-

sent. The Government always has the advantage and always will agree.

1 Comments, Recommendations and Suggestions Received Concerning the Preliminary Draft of the Federal Rules of Criminal Procedure 139 (Sept. 25, 1943) (on file in the Harvard Law School Library).

**2.** The Government disputes this distinction and claims that the parties here agreed to accept the verdict of 11 jurors, just as the parties did in *Vega.* However, the record clearly reveals that the District Court offered Pachay the opportunity "to go on an 11 to 1 basis."

The Government suggests that this case would be exactly like *Vega* if the District Judge

The panel that decided *Vega* explicitly noted that the cases prohibiting waiver of jury unanimity were not applicable to the facts of *Vega* and that the defendant had not waived his right to a unanimous verdict; instead he had waived his right to a jury of 12. *Id.* at 701. We would hardly be following *Vega* if we ignored the distinction that decision carefully drew between waiver of a jury of 12 and waiver of unanimity. No doubt circumstances can be imagined where the parties' attempt to excuse a hold-out juror pursuant to Rule 23(b) would be tantamount to acceptance of a non-unanimous verdict forbidden by Rule 31(a), and perhaps *Vega* marks the furthest a court ought to go in using Rule 23(b) when jury disagreement is reported. In any event, we do not think *Vega's* application of Rule 23(b) to the facts of that case warrants our departing from the uniform view of three circuits that Rule 31(a) prohibits waiver of unanimity.

## III.

Though the three circuits that have read Rule 31(a) to bar waiver of unanimity have all ruled that a conviction entered by a non-unanimous jury to which a defendant consented must be set aside, we think the consequence of violating Rule 31(a)'s prohibition of waiving unanimity deserves explicit consideration, especially in light of our recent decision in *United States v. Hillard,* 701 F.2d 1052 (2d Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2431, 76 L.Ed.2d —— (1983). In *Hillard,* one of the jurors became ill after two and one-half days of deliberations following a trial that had lasted more than three weeks. The trial judge excused the ill juror and substituted one of the alternate jurors after ascertaining that the alternate would be able to participate as an impartial juror and

after instructing the reconstituted jury to begin their deliberations anew. Hillard appealed the ensuing conviction. We agreed that the substitution of an alternate juror after deliberations had begun violated Rule 24(c), but we nevertheless affirmed, adopting the view expressed in other cases, *United States v. Kopituk,* 690 F.2d 1289, 1306–11 (11th Cir.1982); *United States v. Phillips,* 664 F.2d 971, 990–96 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *contra United States v. Lamb,* 529 F.2d 1153 (9th Cir.1975) (en banc), that a violation of Rule 24(c) does not require reversal of a conviction obtained after a prolonged trial as long as the record contains satisfactory assurance that the late substitution of an alternate juror caused no prejudice.

Understandably, the Government urges here that if a Rule 24(c) violation does not necessarily require reversal when imposed over the defendant's objection, a Rule 31(a) violation should not require reversal when accomplished with the defendant's consent. Underlying this argument is the forceful point that Pachay made a bargain that gave him the opportunity for a benefit—the possibility of an 11 to 1 acquittal—and that he should be held to his bargain. We think the Government's argument fails to reckon with the distinctions between Rules 24(c) and 31(a). As *Hillard* makes clear, a concern of the drafters of Rule 24(c) was to guard against the risk of prejudice that might arise if jurors pressured a lone dissenter to claim disability and withdraw in favor of an alternate and if that alternate had been exposed to improper influences. *United States v. Hillard, supra,* 701 F.2d at 1057. We were satisfied in *Hillard* that those risks were adequately eliminated by the clear evidence of the excused juror's

had brought the 12 jurors into the jury box, asked the one disagreeing juror to identify himself, obtained the parties' consent to his dismissal and to a jury of 11, and then taken a verdict from the "unanimous" jury of 11. We need not decide whether such a procedure would extend *Vega* to the point where Rule 31(a) would be violated. We note, however, that such a procedure would differ from what

occurred in *Vega* because it would omit any deliberation by the agreed upon jury of 11. Moreover, it would have been improper for the District Judge to require the disagreeing juror to identify himself, and, if his identity had become known in this case prior to return of the verdict, there is no reason to think that Pachay would have agreed to his dismissal or to a verdict by the remaining 11 jurors.

illness and by the trial judge's careful voir dire of the alternate juror. By contrast, the concern of the drafters of Rule 31(a) is not amenable to similar assurance that Pachay did not fall victim to the precise evil the bar on waiver was designed to avoid. Waiver of unanimity was prohibited in response to concern that a defendant would inevitably be under pressure to accede to the suggestion of a trial judge that he accept a non-unanimous verdict and the difficulty of ascertaining a defendant's true motivation under such circumstances. There is no dispute in this case that the idea of waiving unanimity was put to the defendant by the District Judge. Though Pachay acknowledged his understanding of his waiver,[3] there can be no satisfactory assurance that he did not accede to the Judge's suggestion, at least in part, to avoid incurring the displeasure of the person who might soon be sentencing him. Pachay's waiver thus not only violated Rule 31(a), it did so under the very circumstances that warranted the prohibition against waiver of unanimity.[4]

Furthermore, when the juror became ill in *Hillard*, the District Judge faced the certainty of a mistrial unless he substituted an alternate juror. Here, the District Judge had the option of requesting the 12 jurors to continue their efforts to reach a verdict, perhaps with the guidance of an *Allen* charge. Finally, we note that the illness of a juror during deliberations, while obviously not unimaginable, is an entirely unexpected occurrence, understandably prompting concern not to waste the time invested in a long trial, if at all possible. Here, however, the disagreement of a juror during the course of deliberations is hardly unexpected. The requirement of unanimity and the prohibition of its waiver mandate that, especially after a trial lasting only two days, the only acceptable recourse is further deliberation until either a verdict is returned or the point is reached where a mistrial is granted because of jury disagreement.[5]

■ For all of these reasons, we join with the unanimous view of three other circuits that a conviction obtained after a purported waiver of jury unanimity must be set aside. The judgment is therefore reversed and the cause remanded for a new trial.

---

**3.** If waiver of unanimity were ever permitted, we doubt if the District Court's brief colloquy with the defendant would suffice to establish adequate understanding. The entire colloquy was as follows:

> The Court: I want you to understand that you are entitled to a unanimous verdict of the jury, but like any right you can waive it, so long as your waiver is intentional and knowing.
>
> Have you discussed it with Mr. Joy [defense counsel]?
>
> The defendant: Yes.
>
> The Court: You understand that whatever the jury verdict is you have waived your right to have a unanimous verdict of 12 jurors?
>
> The defendant: Yes.

The colloquy omitted any explanation of the alternative course available—further deliberations by the jury with the possibilities of either a verdict or a mistrial in the event of unresolved juror disagreement. Moreover, Pachay, who required an interpreter at trial, would doubtless have been better informed if told explicitly that if the jury voted 11 to 1 to find him guilty, the District Judge would accept that verdict.

**4.** Judge Meskill's concurring opinion questions our reliance on the risk that Pachay might have been subtly coerced into waiving unanimity. As he points out, Pachay has not sought an opportunity to prove coercion in the District Court. But the drafters of Rule 31(a), by choosing to prohibit waiver of unanimity, evidently preferred to avoid inquiry into the motives of a defendant who accepts a trial judge's invitation to waive unanimity. That is why violation of the Rule's prohibition of waiver requires reversal, at least in a case like this, where the waiver was suggested by the District Judge.

We need not consider whether a waiver obtained in violation of a rule prohibiting waiver can ever be given effect, as, for example, if the idea of accepting a non-unanimous verdict originated with a defendant.

**5.** That point had not yet been reached in Pachay's case. The District Judge noted that unless "we" are willing to accept a non-unanimous verdict, he would have to decide whether to declare a mistrial, a decision he characterized as a "hard choice."

MESKILL, Circuit Judge, concurring in the result:

I concur in the result reached by the majority because there is insufficient evidence in the record to show that Freddy Pachay knowingly and intelligently waived his right to a unanimous jury verdict. Relying on Rule 31(a) of the Federal Rules of Criminal Procedure, which provides that the verdict in federal criminal trials shall be unanimous, the majority concludes "that a conviction obtained after a purported waiver of jury unanimity must be set aside." I disagree. I do not believe that Rule 31(a) does anything more than restate a defendant's right to a unanimous verdict and protect that right from interference by the trial judge. I cannot agree that a violation of Rule 31(a) requires reversal in the absence of prejudice.

The accused in a federal criminal trial undeniably enjoys the constitutional right to a trial by jury. U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ."), amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). Although the Constitution nowhere defines the essential elements of a trial by jury, it incorporates the common law requirements:

> (1) [T]hat the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous.

*Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854 (1930). The essential element of unanimity of verdict is inextricably rooted in our jurisprudence, *Apodaca v. Oregon,* 406 U.S. 404, 407–10, 92 S.Ct. 1628, 1631–32, 32 L.Ed.2d 184 (1972), and remains "one of the indispensable features of *federal* jury trial," *Johnson v. Louisiana,* 406 U.S. 356, 369, 92 S.Ct. 1620, 1637, 32 L.Ed.2d 152 (1972) (Powell, *J.,* concurring in the judgment); *see Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948). Rule 31(a) of the Federal Rules of Criminal Procedure reflects this truth, providing plainly: "The verdict shall be unanimous."

The Supreme Court has never considered whether a criminal defendant can constitutionally waive the requirement of a unanimous verdict, except to hold that unanimity is not required in state criminal trials. *Apodaca v. Oregon,* 406 U.S. at 406, 92 S.Ct. at 1630; *Johnson v. Louisiana,* 406 U.S. at 362–63, 92 S.Ct. at 1624–25; *but see Burch v. Louisiana,* 441 U.S. 130, 139, 99 S.Ct. 1623, 1628, 60 L.Ed.2d 96 (1979) (nonunanimous verdict of *six* person jury violates constitutional right to trial by jury). The Court has held, however, that the remaining two essential elements of trial by jury can be waived—the parties may consent to a jury of less than twelve persons and, of course, the defendant can forego his right to a trial by pleading guilty. *See Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968) ("we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial"); *Patton v. United States,* 281 U.S. 276, 299, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930) ("court has authority in the exercise of a sound discretion to accept the waiver, and, as a necessary corollary, to proceed to the trial and determination of the case with a reduced number or without a jury"). In *Patton v. United States,* the Supreme Court considered whether the reduction of a jury from twelve to eleven persons with the consent of the parties offended the constitutional guarantee of trial by jury. The Court framed the inquiry as follows:

> Is the effect of the constitutional provisions in respect of trial by jury to establish a tribunal as a part of the frame of government, or only to guarantee to the accused the right to such a trial?

281 U.S. at 293, 50 S.Ct. at 256. The history of the jury, its English and colonial antecedents, and the pertinent provisions of the Constitution convinced the Court that,

Article III, Section 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement.

*Id.* at 298, 50 S.Ct. at 258. Although the Court upheld the defendant's waiver of his right to a jury of twelve men, it recognized that the important public interest in preserving the jury as the regular form of factfinding in criminal trials required the consent of the government and the court before a waiver could be effective. *Id.* at 312, 50 S.Ct. at 263.

If a defendant is able to waive his right to a trial by jury without offending the Constitution, I am hard pressed to find any basis for precluding him from waiving the requirement of a unanimous verdict. Under *Patton,* if unanimity is a right conferred on the defendant, as opposed to an element of the court's jurisdiction, a necessary corollary of that right is the defendant's freedom to waive a unanimous verdict, subject, of course, to the consent of the government and the court. Although the issue in *Patton* was the size of the jury rather than the form of its verdict, the same result should obtain. The requirement of unanimity is incidental to the constitutionally guaranteed right of trial by jury. I find no suggestion in the Constitution or the case law that the jurisdiction of a federal criminal court to impose sentence is contingent on a unanimous jury verdict. As the Court observed in *Patton:* "public policy is not so inconsistent as to permit the accused to dispense with *every* form of trial by a plea of guilty, and yet forbid him to dispense with a *particular* form of trial by consent." *Id.* at 306, 50 S.Ct. at 261.

The constitutional requirement of unanimity of verdict was undoubtedly intended to confer a right on the defendant. Although a defendant is not entitled to insist on a nonunanimous verdict, *Singer v. United States,* 380 U.S. 24, 34–36, 85 S.Ct. 783, 789–790, 13 L.Ed.2d 630 (1965); *see Gannett Co. v. DePasquale County Court,* 443 U.S. 368, 382, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979), and the Congress retains the right to promulgate "reasonable procedural regulations" governing the form of a waiver, *Singer v. United States,* 380 U.S. at 35, 85 S.Ct. at 790. I do not believe a trial judge is without power to accept a defendant's knowing and intelligent waiver of his right to a unanimous verdict. Constitutional rights are guarantees, privileges secured to the individual, not directives of the sovereign mandating what is in the best interests of that individual. As such, those rights can usually be waived at the instance of the defendant. Likewise, the right to a unanimous verdict is a restraint on the government; it is not a restraint on the accused.

The majority construes Rule 31(a) as precluding waiver of unanimity in federal criminal trials, but leaves open in footnote 4 the question of whether a waiver obtained in violation of the Rule can ever be given effect. In support, the majority relies upon the decisions of three sister courts of appeals and upon the history of the Rule which indicates that its drafters rejected a provision for waiver. The Third and Ninth Circuits have focused on the institutional role of the jury and have concluded that unanimity is necessary to ensure that the views of each juror are considered and evaluated. *United States v. Lopez,* 581 F.2d 1338, 1341 (9th Cir.1978); *United States v. Scalzitti,* 578 F.2d 507, 512 (3d Cir.1978). However, there is no constitutional requirement that a verdict embody the views of all members of the community, *Apodaca v. Oregon,* 406 U.S. at 413, 92 S.Ct. at 1634, and unanimity is not essential to establish guilt beyond a reasonable doubt in state court, *Johnson v. Louisiana,* 406 U.S. at 361–62, 92 S.Ct. at 1624–25. Because the essential character of the jury is retained despite a nonunanimous verdict, I see no constitutional impediment to a defendant's waiver of unanimity.

Moreover, I am not convinced that Rule 31(a) was intended to prevent a defendant from voluntarily waiving his right to a unanimous verdict. *Cf. Schick v. United States,* 195 U.S. 65, 72, 24 S.Ct. 826, 828, 49 L.Ed. 99 (1904) ("When there is no constitu-

tional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy."), *quoted in Patton v. United States,* 281 U.S. at 310, 50 S.Ct. at 262. As the majority explains, the history of Rule 31(a) reveals the drafters' intent to preserve the fundamental right of a defendant to a unanimous verdict. Fed.R.Crim.P. 31(a) advisory committee note ("This rule is a restatement of existing law and practice."); *see generally Patton v. United States,* 281 U.S. at 288, 50 S.Ct. at 254 (constitutional right to trial by jury includes right to a unanimous verdict). A principal concern of the drafters was the potential for coercion in the event a trial judge, for whatever reason, suggested or recommended to a defendant that he waive his right to a unanimous jury verdict. In such a case, the defendant may feel pressured to accede to the judge's advice for fear of a harsh sentence if he refused to waive and was later convicted by a unanimous jury. *See Hibdon v. United States,* 204 F.2d 834, 839 (6th Cir.1953). Thus, Rule 31(a) was designed, at least in part, to prevent coerced or unwitting waivers of unanimity. Accordingly, the concerns underlying Rule 31(a) are not implicated when it is the defendant who affirmatively offers a knowing and intelligent waiver.

Rule 31(a) restates a defendant's right to a unanimous verdict and protects that right from interference by the trial judge. Although hung juries usually lean toward a verdict of guilty, *see Johnson v. Louisiana,* 406 U.S. 356, 390–91, 92 S.Ct. 1620, 1648–49, 32 L.Ed.2d 152 (1972) (Douglas, *J.,* dissenting), it is not our job to question whether it was in the best interest of the defendant to waive his right to unanimity. Our estimation of probabilities is no substitute for the reasoned judgment of the defendant and his counsel. *See United States v. Curcio,* 694 F.2d 14, 25 (2d Cir.1982) ("To be sure, the defendants' choice of joint representation, like that of self-representation, may sometimes seem woefully foolish to the judge. But ... the choice is mainly theirs ...."); *United States v. Vega,* 447 F.2d 698, 701 (2d Cir.1971), *cert. denied,* 404 U.S. 1038, 92

S.Ct. 712, 30 L.Ed.2d 730 (1972) (no error where "[d]efendant and his counsel probably believed that he was going to obtain a favorable decision from that particular jury and upon his agreed-upon jury of 11 he was willing to 'gamble.' "). We serve no person's interest when we construe a protected right in a way that severely restricts the very liberty which the Constitution was designed to secure.

Having said all this, I do not quarrel with the majority's conclusion that Rule 31(a) was violated in this case. The prohibition of Rule 31(a) was called into play because it was the trial judge who suggested that Pachay should consider waiving his right to a unanimous verdict. At a most critical point in the jury's deliberations—Friday, 6:15 p.m., with "[a] difference of opinion of a single juror" preventing unanimity—the trial judge brought to bear on Pachay the possibility of coercion and undue pressure that Rule 31(a) was designed to prevent.

Yet, I do not believe, as does the majority, that reversal is automatically required. As I explained earlier, I do not read Rule 31(a) to prohibit a knowing and intelligent waiver by a defendant of his right to a unanimous verdict. The objective of the Rule is more pointed—to prohibit interference with a defendant's right to a unanimous verdict. Therefore, I would affirm a nonunanimous verdict of guilty despite a violation of Rule 31(a) where there is no evidence to suggest that the defendant was prejudiced. In *United States v. Hillard,* 701 F.2d 1052 (2d Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983), we held that violation of Rule 24(c), which precludes the substitution of jurors after deliberations have begun, does not require reversal absent a showing of prejudice. In the circumstances of that case, reversal was unnecessary because the evils that Rule 24(c) was designed to prevent were eliminated by evidence that the excused juror was unable to continue due to illness and by the absence of any evidence that the substitute juror had been coerced by the remaining members of the jury. *Id.* at 1059. The majority distin-

guishes *Hillard* on the ground that "there can be no satisfactory assurance that he [Pachay] did not accede to the Judge's suggestion, at least in part, to avoid incurring the displeasure of the person who might soon be sentencing him." The plain truth is that Pachay has not to this day asserted that his waiver was coerced or influenced by the trial judge. Pachay did not move to vacate his sentence as did the defendant in *Hibdon v. United States*, 204 F.2d 834, 836 (6th Cir.1953), or move for a new trial pursuant to Rule 33 as did the defendant in *United States v. Scalzitti*, 578 F.2d 507, 510 (3d Cir.1978). At no point prior to, during, or after his waiver did Pachay protest the trial judge's actions. Even Pachay's brief on appeal lacks a specific assertion that he was unduly influenced or pressured by the trial judge. There is simply no indication in the record that Pachay was prejudiced by the evil that Rule 31(a) was designed to prevent and I am not inclined to entertain Pachay's argument, made for the first time on appeal, that he was coerced into forfeiting his right to a unanimous jury verdict. *See Government Of the Virgin Islands v. Parrott*, 476 F.2d 1058, 1061–62 (3d Cir. 1973), *cert. denied*, 414 U.S. 871, 94 S.Ct. 97, 38 L.Ed.2d 90 (1973).

Nevertheless, the conviction must be reversed because the record does not indicate a knowing and voluntary waiver by Pachay of his right to a unanimous verdict. As the majority recognizes in footnote 3, the trial judge accepted Pachay's waiver without any assurance that Pachay understood the alternatives available to him. The trial judge should not accept a waiver of a right as fundamental as the right to a unanimous verdict without adequate assurance that the defendant's decision was voluntary and made with full awareness of the alternatives to and consequences of the waiver. While I would permit a defendant to waive his right to a unanimous verdict, I would require strict adherence to the precautions detailed by the Supreme Court in *Patton v. United States*:

> Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of the government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

281 U.S. at 312–13, 50 S.Ct. at 263.