UNITED STATES of America,
Plaintiff-Appellee,

v.

Eric SMEDES, Defendant-Appellant.

No. 84–1247.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1985.

Decided April 25, 1985.

Wellford, Circuit Judge, filed concurring opinion.

George G. Newman, Patricia McKanna (argued), Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., F. William Soisson, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Before WELLFORD and MILBURN, Circuit Judges, and HILLMAN, District Judge.*

HILLMAN, District Judge.

Appellant Eric Smedes was indicted on 46 counts of mail fraud. The scheme described in the indictment involved the defendant's participation in submitting to Blue Cross-Blue Shield of Michigan fraudulent duplicate billings for medical laboratory services through the use of computer generated information. A verdict of guilty was returned on all counts. Appellant on appeal claims that judgment and sentence were rendered upon a non-unanimous verdict of 12 jurors in violation of Fed.R.Crim.P. 31(a) and the sixth amendment. We agree and reverse.

On November 22, 1983, a 12-member jury was impanelled, trial commenced, and continued to December 5. Following closing arguments and instructions from the court,

---

* Honorable Douglas W. Hillman, District Judge, United States District Court for the Western District of Michigan, sitting by designation.

the 12 jurors began deliberating. On December 6, 1983, at 3:50 p.m., the jury foreman transmitted the following note to the court:

"We have a hung jury. The vote is 11–1. We have gone over and over but no results. Please explain what we are supposed to do or try. Thanks."

(Tr., p. 5). After reading the note in open court, the trial judge gave an instruction commonly referred to as an "*Allen* charge." Thereafter, the jury was excused for the day and instructed to return at 9:00 a.m. on December 7, 1983, to continue deliberations.

On December 7, 1983, at 11:53 a.m., the district judge received the following message from the jury:

"Closemindedness will not enhance a jury's duty of reaching a unanimous decision. We are sorry; but because of this closemindedness, we cannot reach a decision. There has been no movement and have been informed that no movement should be expected."

(Tr., p. 9).

Immediately thereafter, the following colloquy took place:

"THE COURT: I think we have reached a point where we will have to declare a mistrial in this case unless one of two things happens. We learned, unfortunately, we shouldn't have, but we did learn yesterday that their vote was 11–1. If everyone stipulates, I am perfectly willing to take a verdict from 11 if there is a stipulation by all parties. If not, then I see no choice but to declare a mistrial and set it for a new trial.

Are you interested in stipulation to a verdict of 11?

MR. SOISSON: Certainly.

THE COURT: Are you, Mr. Newman?

MR. NEWMAN: May I confer?

THE COURT: You may. Talk with Mr. Smedes.

\*     \*     \*     \*     \*     \*

MR. NEWMAN: May it please this Honorable Court, I have conferred—may the record reflect that I have conferred briefly with Mr. Smedes. I have made it entirely clear to him that it is within his hands, whether this matter be decided by the 11 or not, to which the Government is prepared to stipulate. Being informed of his rights in this matter, he is prepared to agree to join the Government in its stipulation to go with the 11.

THE COURT: Mr. Smedes, let me be sure you understand. You understand that if you don't agree what will happen now is I will declare a mistrial and this case will be tried over; do you understand that?

MR. SMEDES: That I understand, sir.

THE COURT: And that you are under no compulsion whatsoever to agree to a verdict of 11, it must be your voluntary agreement?

MR. SMEDES: That I understand.

THE COURT: And you do agree to a verdict of 11 people?

MR. SMEDES: Yes, I do.

THE COURT: Then I think what I should do is bring the jury in. They will have to fill out the verdict roll. I will ask them to fill it out with 11 and we will go from there."

(Tr., pp. 9–11).

After both counsel agreed with trial court's suggestion of accepting the verdict of 11, a lengthy discussion ensued as to the appropriate procedure for doing so. The prosecutor wanted "to make sure we are in full compliance with Rule 23 before we proceed." Ultimately, the trial court and both counsel agreed upon a procedure and the following sequence of events took place. The stipulation was reduced to writing as required by the rule. The court, at the urging of the Government, then agreed to advise the jury of the stipulation.

At 12:03 p.m. on December 7, 1983, the trial judge instructed the jury as follows:

"THE COURT: Members of the Jury, there is one thing I want to say to you now. I have your latest message. It has been agreed that if 11 of you agree upon a verdict that verdict may be your verdict. If 11 of you agree. So I am

going to ask you now to return, I am going to send you to lunch now, and ask you to return at 1:30. At that time, if 11 of you agree, you may fill out the verdict roll and let us know. You may be excused now. All of you please report back to the juryroom at 1:30....

As I say, if 11 of you have agreed upon a verdict, you may complete the verdict roll. (The jury was excused.)"

(Tr., pp. 15–16).

At 1:50 p.m., in the absence of the jury, the trial judge read the following stipulation signed by the prosecutor, the defendant, and the defendant's attorney:

"It is hereby stipulated and agreed by the undersigned parties in this cause pursuant to Rule 23(b) of the Federal Rules of Criminal Procedure, that the Court may accept and the jury may return a valid verdict with regard to the charges contained in the Indictment if eleven (11) of the jurors unanimously agree upon a verdict and that the Court may excuse the twelfth or nonconcurring juror."

(Tr., p. 17).

At 1:55 p.m. on December 7, 1983, the jury (still composed of 12) returned to the courtroom whereupon the following colloquy took place:

"THE COURT: Would the foreperson stand, please.

Mr. Foreman, it is my understanding that 11 of the jurors have agreed upon a verdict, is that correct?

JUROR NO. 9: That is correct.

THE COURT: Would the one juror who disagrees, please stand. (Juror No. 10 stood.)

THE COURT: All right, sir, you may step down.

Mr. Foreman at this point, it having been agreed by all the parties that a verdict

may be taken by 11 of the jurors, I am going to excuse you, sir, with our thanks for your attendance and careful attention to this case. Do not feel badly that you disagree, that is your prerogative, but you are now excused and you may be on your way. (Juror No. 10 was excused.)

THE COURT: All right, Mr. Foreman, will you please rise.

I have been handed a verdict roll on 46 counts which has been marked and purportedly signed by you. I will read it and then I will ask the Clerk to ask you and the rest of the jury if this is your verdict.

According to the verdict roll, on all 46 counts of the Indictment the jury finds that the Defendant is guilty."

(Tr., pp. 21–22).

Fed.R.Crim.P. 23(b) provides for 12 person juries in federal criminal cases unless both parties agree, with the approval of the court, to some lesser number.[1] It is undisputed, however, that in federal criminal trials, verdicts (whether of 12 or 11 jurors) must be unanimous.[2] As stated by Justice Powell in *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972):

"In an unbroken line of cases reaching back into the late 1880's, the Justices of this Court have recognized, virtually without dissent, that unanimity is one of the indispensable features of *federal* jury trial. *Andres v. United States*, 333 U.S. 740, 748–749 [68 S.Ct. 880, 884–885, 92 L.Ed. 1055] (1948); *Patton v. United States*, 281 U.S. 276, 288–290 [50 S.Ct. 253, 254–255, 74 L.Ed. 854] (1930); *Hawaii v. Mankichi*, 190 U.S. 197, 211–212 [23 S.Ct. 787, 788–789, 47 L.Ed. 1016] (1903) (see also Mr. Justice Harlan's dissenting opinion); *Maxwell v. Dow*, 176 U.S. 581, 586 [20 S.Ct. 448, 450, 44 L.Ed.

---

1. Rule 23(b) reads as follows:

"(b) **Jury of Less Than Twelve.** Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after

trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors."

2. See Fed.R.Crim.P. 31(a).

597] (1900) (see also Mr. Justice Harlan's dissenting opinion); *Thompson v. Utah*, 170 U.S. 343, 355 [18 S.Ct. 620, 624, 42 L.Ed. 1061] (1989). In these cases, the Court has presumed that unanimous verdicts are essential in federal jury trials, not because unanimity is necessarily fundamental to the function performed by the jury, but because that result is mandated by history. The reasoning that runs throughout this Court's Sixth Amendment precedents is that, in amending the Constitution to guarantee the right to jury trial, the framers desired to preserve the jury safeguard as it was known to them at common law. At the time the Bill of Rights was adopted, unanimity had long been established as one of the attributes of a jury conviction at common law. It therefore seems to me, in accord both with history and precedent, that the Sixth Amendment requires a unanimous jury verdict to convict in a federal criminal trial."

406 U.S. at 369, 92 S.Ct. at 1637 (Powell, J., concurring) (footnotes omitted; emphasis in original). *See also Andres v. United States*, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); *Apodaca v. Oregon*, 406 U.S. 404, 369, 92 S.Ct. 1628, 1637, 32 L.Ed.2d 184 (1972) (Powell, J., concurring).

The Government argues that all parties, including the defendant himself, agreed to reduce the jury from 12 to 11 persons prior to verdict in accordance with Rule 23. The Government claims that by identifying and eliminating the sole dissenter, the 11 jurors remaining in the box then announced their "unanimous" verdict of guilty.

We must first decide whether the verdict below was the unanimous verdict of an 11 person jury or the non-unanimous verdict of a 12 person jury. In *United States v. Vega*, 447 F.2d 698 (2d Cir.1971), during jury deliberations it became apparent the jury could not reach agreement. One of the jurors sent the court a note stating:

"Your Honor. I am the primary holdout. I cannot change by opinion in good conscience and feel that to do so under pressure would violate my oath as a ju-

ror. I respectfully request that the jury be dismissed. Ralph Hoag."

*Id.* at 700. After discussing the matter with counsel and the parties, it was agreed that the holdout would be dismissed and the parties would accept a unanimous verdict of 11. The dissenter was excused and the jury of 11 was then returned to the jury room where it continued its deliberations and then returned with the unanimous verdict of guilty. The Second Circuit held this to have been a unanimous verdict of 11 permitted under Fed.R.Crim.P. 23(b).

In a subsequent case, *United States v. Scalzitti*, 578 F.2d 507 (3d Cir.1978), the Third Circuit reversed a verdict of guilty returned upon a vote of 11–1. In commenting upon the *Vega* decision, the court said:

"Most importantly, the jury in *Vega* deliberated until it reached a unanimous verdict of its eleven members. Thus the unanimity requirement fulfilled its function in that case. Indeed, when the one holdout juror was excused in *Vega* both the court and the parties had some indication that there were other holdout jurors. In fact, subsequent deliberations revealed that at least one other juror had serious doubts as to the defendant's guilt and had to be persuaded by the majority to vote to convict.... By contrast, the jury in the instant case never was required to reach a verdict in which all members deliberating concurred."

*Id.* at 512–13.

In *United States v. Pachay*, 711 F.2d 488 (2d Cir.1983), a dissenter held out and again the parties agreed to take a verdict of 11, but the holdout was not identified until after the verdict was returned. "[H]e was not excused, and the jury that returned the verdict was not a jury of 11 that deliberated as a group of 11 and returned a unanimous verdict, it was a jury of 12 that returned a non-unanimous verdict." *Id.* at 491. In commenting on *Vega*, the court emphasized as "of great significance" the fact that the dissenting juror was excused and thereafter the district judge sent the jury back to the jury room where they

continued their deliberations for some time before they reached a verdict. *Id.*

In the present case although it apparently was the intention of the court and the parties to accept a unanimous verdict from a jury of less than 12 persons, this in fact was not done. As in *Pachay*, the jury remained a body of 12 throughout its deliberations, and their vote was 11–1 until the dissenter was excused. During its deliberations, the jury was never of one mind. The jury was never required to reach a verdict in which all members deliberating concurred. Consequently, the jury verdict was not unanimous. Unlike *Vega*, the jury did not return to the jury room to continue its deliberations once the dissenter was excused. We are not called upon to either approve or disapprove the result in *Vega*. We only note the facts are different. Since the verdict in the case before us was not unanimous, it cannot stand. As stated in *United States v. Lopez,* 581 F.2d 1338, 1341 (9th Cir.1978):

"As recognized by the Third Circuit, the requirement of a unanimous verdict is firmly established in the federal system, *United States v. Scalzitti, supra; see Apodaca v. Oregon,* 406 U.S. 404, 469, 92 S.Ct. 1628, 1635, 32 L.Ed.2d 184 (1972) (Powell, J., concurring), and the result we reach is consistent with that practice. The dynamics of the jury process are such that often only one or two members express doubt as to view held by a majority at the outset of deliberations. A rule which insists on unanimity furthers the deliberative process by requiring the minority view to be examined and, if possible, accepted or rejected by the entire jury. The requirement of jury unanimity thus has a precise effect on the fact-finding process, one which gives particular significance and conclusiveness to the jury's verdict. Both the defendant and society can place special confidence in a unanimous verdict, and we are unwilling to surrender the values of that mode of fact-finding, or to examine the constitutional implications of an attempt to do so,

absent a clear mandate in the Rules or a controlling statute."

The Government argues in its brief, that even if the court finds the verdict was not unanimous, the verdict of 11–1 should be upheld in any event on the theory that the defendant waived his right to a unanimous verdict. This argument fails for two reasons. First, as the Government has already conceded in its brief, the defendant intended to accept a unanimous verdict from an 11-person jury. There is no evidence in the record that the defendant ever agreed to accept a less than unanimous verdict. Secondly, even if he had intended to waive a unanimous verdict, this would have been of no avail. An early proposal by the Advisory Committee on Criminal Rules to permit, on stipulation of the parties, a verdict by a stated majority, met with much criticism and was eliminated from the Rule that became Fed.R. Crim.P. 31(a). 3 Wright, *Federal Practice and Procedure,* § 511 at 3–4. Thus, the courts have consistently held that the right to a unanimous verdict is so important that it is one of the few rights of a criminal defendant that cannot, under any circumstances, be waived. *See United States v. Pachay,* 711 F.2d 488, 491 (2d Cir.1983); *United States v. Morris,* 612 F.2d 483, 489 (10th Cir.1979); *United States v. Lopez,* 581 F.2d 1338, 1341 (9th Cir.1978); *United States v. Scalzitti,* 578 F.2d 507, 512 (3d Cir.1978); *Sincox v. United States,* 571 F.2d 876, 878 (5th Cir.1978); *Hibdon v. United States,* 204 F.2d 834, 838 (6th Cir. 1953).

Since the judgment of the district court was based upon a non-unanimous verdict, the judgment will be reversed, and a new trial granted.

WELLFORD, Circuit Judge, concurring:

I concur in the reasoned decision of Judge Hillman. I would emphasize, however, that in my opinion the result is compelled by Fed.R.Crim.P. 23(b) requirements, which may be subject to change, not by a constitutional mandate.