UNITED STATES of America

v.

John Edward SCALZITTI, Louis J. Maricondi, Thomas J. Fanell, William L. Berns, Robert H. Cameron.

Appeal of John SCALZITTI in No. 77–1861.

Appeal of Thomas FANELL in No. 77–1862.

Appeal of Louis J. MARICONDI, in No. 77–1863.

Nos. 77–1861 to 77–1863.

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1978.

Decided June 7, 1978.

Blair A. Griffith, U. S. Atty., Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Thomas A. Livingston, Dennis Clark, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellants in Nos. 77–1861 and 77–1862.

Irving M. Green, New Kensington, Pa., for appellant in No. 77–1863.

Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Defendants appeal the judgments of the district court entered after a jury found them guilty on several counts of making false statements in a loan application to a federally insured bank in violation of 18 U.S.C. § 1014 (1976), and of aiding and abetting the same in violation of 18 U.S.C. § 2 (1976).

### I.

We first consider the contentions of one of the defendants, Fanell, that there was insufficient evidence to create a jury issue as to the charges that he violated 18 U.S.C. § 1014, or that he aided and abetted others in violating that statute. Section 1014 provides in pertinent part:

Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1014 (1976).

Defendant Fanell was found guilty under two counts of the indictment, both of which alleged that he "knowingly did make, and cause to be made, materially false statements in an application for a loan submitted by the defendants . . . to the Mellon Bank . . . a bank the deposits of which are insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of said bank to approve said loan."

Both sides agree that the Government had the burden of proving, *inter alia*, that Fanell knowingly aided and abetted the defendant Scalzitti in making a false statement to the Mellon Bank. They differ as to whether the Government made a sufficient showing on that point.

■ The evidence shows that Fanell was an experienced businessman and truck dealer who owned a firm known as National Fleet Recon Center, which repaired and reconditioned trucks. Fanell signed two forms granting powers of attorney to one William Berns. Those powers of attorney gave Berns authority to act for Fanell in "all transactions including financing agreements" in connection with the purchase and sale of motor vehicles. Berns managed the used-car operation at Jon's Oldsmobile-Cadillac, Inc. That car dealership was owned by defendant Scalzitti, who was a friend of Fanell.

The powers of attorney were dated on a Sunday, February 18, 1973, and they purported on their face to have been notarized that same Sunday by one Genevieve Cox, an employee of the car dealership. The dealership, however, was in fact closed on Sunday and Genevieve Cox was not at work on that date.

Five days after the date shown on the powers of attorney, Jon's Oldsmobile-Cadillac made a number of loan applications to the Mellon Bank. Two loans were granted by the Bank on the basis of representations that specific cars had been sold by Jon's Oldsmobile-Cadillac to National Fleet, which was owned by Fanell. The powers of attorney granted by Fanell to Berns were used to support those loan applications. The undisputed proof showed that it was falsely represented that these cars had been sold to Fanell's company.

Does the introduction of this evidence at trial permit a reasonable inference that Fanell knowingly aided and abetted the filing of a false loan application? The Government contends that the unusual relationships of the parties, and the proximity of the date of the execution of the powers of attorney to the date of the applications for the loans, warranted the jury in finding the requisite knowledge on Fanell's part. Fanell contends that no reasonable inference was permissible that he was aware that the powers of attorney would be used in making false statements to a bank.

The powers of attorney were executed under "unusual circumstances." Furthermore, the recipient of the powers managed the used-car division of a car dealership owned by a friend of Fanell. Fanell, on the other hand, operated only a truck dealership. The powers were used within five days after their date of execution as part of a fraudulent scheme to obtain money from a bank. Moreover, that fraudulent scheme was in connection with a "financing agreement" as specifically mentioned in the powers of attorney. Given these circumstances, we think it was permissible for a jury to infer that Fanell was aware when he delivered the powers of attorney that those powers were to be used for the illicit purpose which eventuated.

Fanell relies upon *United States v. Cades*, 495 F.2d 1166 (3d Cir. 1974). *Cades*, however, is distinguishable. In that case, there was no evidence of any connection between the defendant and the illegal acts of the person whom the defendant was accused of aiding and abetting. Here we find that there was sufficient evidence introduced at trial of a connection between Fanell and the illegal acts at issue to permit a reasonable inference that Fanell was aware that the powers of attorney were to be used for an illicit purpose.

We therefore conclude that defendant Fanell's motion for a judgment of acquittal was properly denied.

## II.

All three defendant-appellants contend that the district court erred in allowing the jury to convict them upon the less-than-unanimous verdict of the jury.

## A.

The court submitted the case to the jury on Friday, June 6, 1975. The jury sent several notes to the court during its deliberations on Friday, Saturday, and Monday, all saying that the jury was hopelessly deadlocked because of one "holdout" juror. That holdout juror communicated anonymously with the court, saying that he was unable to agree with the other jurors.

On Monday, June 9, 1975, after allowing the jury to go home for a rest on Sunday, the district judge held a conference in his chambers to discuss with counsel methods of resolving the deadlock. At that conference, one or more of the attorneys for the defendants said he believed that the defendants would be willing to accept a verdict based on the 11–1 deadlock in hopes of reaching some final decision. The Government, however, objected to the acceptance of anything less than the unanimous verdict of twelve.

While this conference in chambers was in progress, the jury sent out another note. This time the jury requested that the testimony of a certain witness be provided it to aid in the deliberations.

Because the court feared that the jury might rely too heavily on the requested testimony if it were provided them during the deliberations, and because the court was concerned over the delay that would be caused by the need to prepare the testimony, the court decided not to rule right away on the jury's request. Rather, the court called the jury into court and explained its reasons for hesitating to grant the request for testimony. The court then outlined the suggested alternative of returning a verdict based on the 11–1 split:

> I suggest to you another alternative that has been advanced by the parties, and in this respect, I refer to previous, a previous [sic] communication to the effect that you stood approximately 11–1.

In this connection, I have agreed to grant a request that if you still remain 11-1; or in any event, if 11 of you are unanimous in the rendering of a verdict in this case, that the verdict of 11 will be accepted.

The district court then sent the jury out to consider, in light of the alternative resolution of the deadlock that the court had outlined, whether the requested testimony would be of "sufficient significance to [allow them to] arrive at a unanimous verdict of 12." In effect, then, the district court gave the jury the choice between returning an 11-1 verdict, or again requesting the testimony in the belief that such testimony was likely to lead to a unanimous verdict of 12.[1]

After the jury again retired, the court questioned each defendant on whether he waived what the district court termed his "constitutional right, to the unanimous verdict of 12 jurors." Each defendant, after consultation with counsel, in turn answered yes to the court's questioning.

The Government continued to object to the acceptance of anything other than a unanimous verdict of 12 jurors. Relying on Fed.R.Crim.P. 23(b)[2] and 31(a)[3], the Government maintained there could be no valid waiver without consent of the Government.

The court overruled the Government's objection on the ground that the consent of the Government was not needed since the defendants were waiving personal constitutional rights.

Without having communicated further with the court, the jury returned its verdicts that same Monday evening. It convicted the three defendant-appellants by verdicts of 11-1 on the various counts in which each was charged. The jury acquitted two other defendants by unanimous verdicts of 12-0. All twelve jurors were polled, and all twelve agreed to the verdicts as announced.

In a post-verdict opinion, the district court granted the defendants a new trial on the ground that it was improper for the court to have accepted the 11-1 verdicts without the consent of the Government. *United States v. Scalzitti*, No. 74-377 (W.D. Pa., Aug. 3, 1976) (post-verdict memorandum). The district court, however, exceeded its authority in granting a new trial on a ground not asserted in a new-trial motion within the 7 day period established by Fed. R.Crim.P. 33. We accordingly granted the Government's petition for a writ of mandamus and ordered that the new trial order be vacated. *United States v. Scalzitti*, 556 F.2d 569 (3d Cir., 1977) (per curiam). This appeal followed sentencing.

### B.

Defendant-appellants argue that the requirement in all federal criminal trials that the verdict be unanimous is of overriding importance and may not be waived by the parties. Accordingly, they argue they are entitled to a new trial because of the acceptance of the 11-1 verdicts in this case.

We first must decide whether the verdicts below were the non-unanimous verdicts of a twelve-person jury, or the unanimous verdicts of an eleven-person jury. The district court, when questioning the defendants concerning waiver, spoke only in terms of the waiver of their "constitutional right, to a unanimous verdict of 12 jurors." The court did not otherwise specify whether the defendants were being asked to waive the right to a unanimous jury, or the right to a twelve-person jury. In granting the

---

1. Neither party attacks this unusual procedure of allowing the jury to decide whether to continue deliberating until reaching unanimity or to bring in a non-unanimous verdict. We therefore do not express any view as to the propriety of the court's action in this regard.

2. Fed.R.Crim.P. 23(b) provides:

(b) Jury of Less Than Twelve.

Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12.

3. Fed.R.Crim.P. 31(a) provides:

(a) Return.

The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

new trial after the verdict had been returned, however, the district court stated that it viewed the 11–1 verdict as not materially different from an 11–0 verdict. *United States v. Scalzitti,* No. 74–377, op. at 6 (W.D.Pa., Aug. 3, 1976) (post-verdict memorandum). Apparently, then, the district court viewed the verdicts as the unanimous verdicts of an eleven-person jury.

We cannot agree with that characterization. Twelve jurors participated in the deliberations at all times. Twelve jurors voted on each of the counts. Twelve jurors returned the verdicts: the verdicts of guilty were returned upon votes of 11–1; the verdicts of acquittal were returned upon votes of 12–0. Twelve jurors were polled, and each of the twelve jurors hearkened to the verdicts as read by the clerk, including the 11–1 verdicts.

In these circumstances, we believe it clear that the verdicts were the non-unanimous verdicts of a twelve-person jury. We also believe it clear, however, that the defendants knowingly and intelligently attempted to waive the unanimity requirement. We must therefore decide whether it was reversible error for the district court to have given effect to that attempt at waiver.

The Government argues that the defendants were capable of waiving their rights to unanimous verdicts in the same manner in which they were capable of waiving their rights to a twelve-person jury, or their rights to a trial by jury at all. The Government believes that there is no support in the Constitution for the unanimous verdict requirement, and that defendants should not be prohibited from waiving a right granted only by the rules of criminal procedure in the absence of a provision in those rules forbidding waiver.

Moreover, the Government maintains that an 11–1 verdict of a twelve-person jury is the functional equivalent of an 11–0 verdict of an eleven-person jury. Since a re-duction in the size of the jury in the circumstances of this case would have been permissible under Fed.R.Crim.P. 23(b) had the Government consented, the Government here contends that the only error committed by the district court in allowing the 11–1 verdicts was in not obtaining the prior consent of the Government. Since the Government no longer complains of that error, it argues that the defendants should not be allowed to raise the issue after having waived their rights at trial.

Five Justices of the Supreme Court have concurred in the view "that unanimity is one of the indispensable features of *federal* jury trial." *Apodaca v. Oregon,* 406 U.S. 404, 369, 92 S.Ct. 1628, 1637, 32 L.Ed.2d 184 (1972) (Powell, J., concurring) (emphasis in original). *See, e. g., id.* at 395, 92 S.Ct. 1628 (Brennan, J., dissenting); *id.* at 414, 92 S.Ct. 1628 (Stewart, J., dissenting). This view is based on the long and unbroken line of federal cases viewing the requirement of unanimity as an essential element of the criminal jury trial as established in the federal system. *E. g., Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); *United States v. Fioravanti,* 412 F.2d 407, 417–418 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).

Congress has recognized in Fed.R.Crim.P. 31(a) that unanimity is an indispensable feature of federal criminal trials. That rule simply says "[t]he verdict shall be unanimous." It contains no provision allowing waiver of unanimity. Indeed, the history of the formulation of Rule 31(a) reveals that the original version suggested by the Advisory Committee provided for waiver of unanimity, but that original version was met with such criticism that it was withdrawn and the present version substituted. C. Wright, Federal Practice and Procedure § 511 (1969). Rule 31(a) thus stands in contrast to rules such as Fed.R.Crim.P. 23(a) and 23(b), where waiver of their provisions is expressly provided for.[4] We note

---

4. See also Fed.R.Crim.P. 31(d). That rule provides that "[i]f upon the poll [of the jury] there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." *Id.* As the Court of Appeals for the Fifth Circuit noted in *Sincox v.* *United States,* 571 F.2d 876 (5th Cir., 1978), Rule 31(d) does not provide for the third option of acceptance of the non-unanimous verdict. *Id.* at 878. We believe that Rule 31(d) is further evidence that the unanimity requirement is not to be waived.

also that both Rule 31(a)—with no waiver provision—and Rules 23(a) and (b)—with express provisions allowing for waiver—were characterized by the Advisory Committee as "restatement[s] of existing law and practice." Notes of Advisory Committee on Federal Rules of Criminal Procedure, Rule 31(a); see *id.*, Rules 23(a), (b).

◼ This lack of a waiver provision in Rule 31(a) is grounded in part in the strong historical tradition of unanimity in federal trials. It also is grounded, we believe, in the function that the requirement of unanimity has in the jury system. Unlike the "historical accident" of jury size, unanimity relates directly the the deliberative function of the jury. Unanimity serves to effectuate the purpose of the jury system by promoting the full expression of the views of all members of the jury and by insuring that those views are taken into account as fully and fairly as possible in reaching a verdict. *See, e. g., Apodaca v. Oregon,* 406 U.S. 404, 397–99, 92 S.Ct. 1628 (1972) (Stewart, J., dissenting); *id.* at 399–403, 92 S.Ct. 1628 (Marshall, J., dissenting). Unanimity is an indispensable element of a federal jury trial because it serves the purpose of insuring that the views of a cross-section of the community are brought to bear fully on the issues to be decided at trial.

◼ We therefore hold that the unanimous verdict requirement, with its deep roots in federal jurisprudence and its clear expression in the unequivocal command of Rule 31(a), should be observed in every trial of a crime in federal court. As such, we conclude that unanimous verdicts are required without regard to any attempts by any of the parties to dispense with this requirement. At least two other courts of appeals have joined in this conclusion. *Sincox v. United States,* 571 F.2d 876, 878 (5th Cir. 1978), *citing United States v. Gipson,* 553 F.2d 453, 456 n. 4 (5th Cir. 1977); *Hibdon v. United States,* 204 F.2d 834, 838 (6th Cir. 1953). It was thus reversible error for the district court to have given effect to the attempts of defendants to waive the unanimous verdict requirement.

◼ We thus do not agree with the Government's contention that the attempt at waiver of a unanimous verdict in this case should be treated as the equivalent of a waiver of a twelve-person jury under Fed.R.Crim.P. 23(b). In making this argument, the Government relies on *United States v. Vega,* 447 F.2d 698 (2d Cir. 1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972). In that case, one holdout juror was excused upon the consent of all the parties, though there was some indication that there were additional jurors who were in disagreement with the majority. *Id.* at 700. The jury continued its deliberations with eleven persons. After the jury returned a unanimous verdict of guilty, the defendant appealed on the ground that he had been denied a unanimous verdict. The court of appeals held that the defendant had received the unanimous verdict of eleven, all to which he was entitled after waiving a twelve-person jury in accordance with Fed.R.Crim.P. 23(b).

Without accepting or rejecting the validity of the holding in *Vega* in other circumstances, we do not believe that the reasoning of that case is applicable here. The defendant in *Vega* clearly had complied with the provisions of Rule 23(b), a rule that expressly provides for waiver of the right to a twelve-person jury. As noted above, the unanimous verdict requirement serves different purposes than does the twelve-person jury rule. Waiver of one right, therefore, cannot be equated with waiver of the other. It is important that unanimity be preserved whether the jury consist of twelve persons, or of six; and indeed, the importance of unanimity may be enhanced when the jury is made up of fewer persons.

Most importantly, the jury in *Vega* deliberated until it reached a unanimous verdict of its eleven members. Thus the unanimity requirement fulfilled its function in that case. Indeed, when the one holdout juror was excused in *Vega* both the court and the parties had some indication that there were

other holdout jurors. In fact, subsequent deliberations revealed that at least one other juror had serious doubts as to the defendant's guilt and had to be persuaded by the majority to vote to convict. *Id.* at 700 & n. 1. By contrast, the jury in the instant case never was required to reach a verdict in which all members deliberating concurred.

We do not believe that it is mere formalism to hold that the non-unanimous verdict returned by the twelve-person jury in this case is not the functional equivalent of a unanimous verdict returned by an eleven-person jury. Rather, recognition of the distinction between these two types of verdicts gives effect to the strong emphasis federal law places on the fundamental requirement that verdicts in criminal cases be unanimous.

We hold that the district court erred in giving effect to the attempts of the defendant-appellants to waive unanimous verdicts. In consequence, the defendant-appellants are entitled to a new trial.

### III.

■ Defendant-appellants contend that they were prejudiced by the joinder of offenses and defendants in the trial of this case. They argue that the district court abused its discretion by denying their motion for severance. We have examined the record, and we find no abuse of discretion in the district court's refusal to grant the severance motion. Fed.R.Crim.P. 8(a), (b).

### IV.

The judgments of the district court will be reversed, and a new trial will be granted.

