**STACEY AMBROSE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS Appellee/Plaintiff**

S. Ct. Crim. No. 2007-41

Supreme Court of the Virgin Islands

December 18, 2008

Pamela Lynn Colon, Esq., St. Croix, USVI, *Attorney for Appellant.*

Mathew Phelan, Esq., Assistant Attorney General, V.I. DepartmentofJustice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice.*[1]

## OPINION OF THE COURT

(December 18, 2008)

PER CURIAM. Stacy Ambrose ("Ambrose") was in an intimate relationship with Ruby Vidal ("Vidal") when the People of the Virgin Islands ("People"). filed an information against Ambrose, charging him with several criminal offenses for acts he allegedly perpetrated upon Vidal. At the end of the trial, the jury convicted Ambrose of assault with a deadly weapon as an act of domestic violence, in violation of section 297(2), title 14 of the Virgin Islands Code ("Code") and section 91(b) (1) & (2), title 16 of the Code. The jury also convicted Ambrose of unauthorized possession of a firearm, during the commission of a crime of violence in violation of section 2253(a), title 14 of the Code.[2] Notwithstanding a juror's dissent from the verdicts during the jury poll, the trial court accepted the verdicts after an in-chamber proceeding in which the dissenting juror was questioned about her verdicts outside the presence of the other jurors.

■ Ambrose appealed his convictions, asserting that the verdicts were not unanimous and, therefore, violated his Constitutional Rights pursuant

---

[1] The Chief Justice appointed the Honorable Julio A. Brady, Judge of the Superior Court of the Virgin Islands, to sit as a designated justice of the Supreme Court pursuant to title 4, section 24(a), of the Virgin Islands Code.

[2] Ambrose was also charged with the following: Count three, Kidnapping for Rape/Domestic Violence in violation of title 14, section 1052(b) and title 16, section 91(b) (4) of the Virgin Islands Code; Count four, Aggravated Rape in the First Degree/Domestic Violence in violation of title 14, section 1700(c) and title 16, section 91(b)(6) of the Virgin Islands Code; Count five, Aggravated Rape First Degree/Domestic Violence in violation of title 14, section 1700(c) and title 16, section 91(b) (6) of the Virgin Islands Code. (Am. Superceding Information, Sept. 8, 2005.) Count 6 is another charge of Aggravated Rape First Degree/Domestic Violence in violation to title 14, section 1700(c) and title 16, section 91(b) (1), (2), (4) and (6). (Trial Tr. vol. vii, 8, Sept. 10, 2005.) Ambrose complains that the amended superceding information did not, unlike the trial court's instruction to the jury, contain the language "during the commission of a crime of violence." He asks this court for a new trial because the variance between the charge on the information and the trial court's jury instructions violated his Constitutional Rights. However, because we will conclude that the Ambrose's convictions were based on invalid verdicts, it is not necessary for us to reach the issue of the variance in the charge.

to the Sixth Amendment[3] to the United States Constitution.[4] The People disagrees, arguing that the issue of jury unanimity was resolved by the trial court's in-chamber questioning of Juror number 4. The People asserts that the trial court conducted the in-chamber proceeding with Juror No. 4 pursuant to the trial court's power to control the trial, and that during that proceeding, Juror No. 4 confirmed her agreement with the verdicts.

After reviewing the trial record, and for the reasons elucidated below, we will reverse the judgment of the trial court and remand the case for a new trial, because the verdicts that were announced in open court were not unanimous verdicts.

## I. FACTS AND PROCEDURAL HISTORY

Ambrose's trial commenced on August 30, 2005. At the conclusion of jury deliberations, the jury's foreperson announced verdicts of "guilty" on the charges of third degree assault and of unauthorized possession of a firearm, the first two counts in the information. (Trial Tr. vol. vii, 43, Sept. 10, 2005.) The jury was deadlocked on the remaining counts, i.e., counts 4, 5 and 6. (Id.).[5] Thereafter, the trial court asked Ambrose whether he wanted to exercise his right to poll the jury. Ambrose answered in the

---

[3] The Sixth Amendment provides that:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation . . .

Ambrose also claims that his Seventh Amendment Rights were violated. The Seventh Amendment to the United States Constitution provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

However, the Seventh Amendment historically governs civil trials and is not applicable to Ambrose's criminal trial.

[4] Ambrose seeks a new trial on many other grounds, but since we will reverse the decision of the trial court because the verdicts of the jury that convicted him were not unanimous, it is not necessary for us to address Ambrose's other contentions.

[5] Subsequently, the court declared a mistrial on those counts where the jurors could not reach a decision. (Trial Tr. vol. vii, 51, Sept. 10, 2005.) Before the case was submitted to the jury, the court dismissed count three and the jurors were instructed not to consider the dismissal in their deliberation. (Tr. Tr. vol. vii, 8, September 10, 2005.)

affirmative. Therefore, the jury poll was conducted in the following manner:

| | |
|---|---|
| The Court: | Very well. Does the Defendant wish the jury polled? |
| Att'y Brusch: | Yes, Your Honor. |
| The Clerk: | Juror number one, are those your independent verdicts? |
| Juror Number One: | Yes. |
| The Clerk: | Juror Number two, are those your independent verdicts? |
| Juror Number Two: | Yes. |
| The Clerk: | Juror number three, are those your independent verdicts? |
| Juror Number Three: | Yes. |
| The Clerk: | Juror number four, are those your independent verdicts? |
| Juror Number Four: | No. |

. . . .

(Trial Tr. vol. vii, 44, Sept. 10, 2005.) Thereafter, the clerk continued to propound the same question to jurors five through twelve and each juror individually answered "yes" to the clerk's question of "are those your independent verdicts?" (*Id.* at 44-45.)

When the jury polling concluded, Ambrose motioned the trial court to enter not guilty verdicts on counts one and two or alternatively a mistrial, arguing that the "no" response by Juror Number Four ("Juror No. 4") confirmed the lack of unanimous verdicts. Over Ambrose's objection, the trial court decided to interview Juror No. 4 in the trial court's chambers, because the court observed that Juror No. 4 looked confused and was fidgeting around, during polling of the jury. The following exchange ensued during a sidebar conference.

| | |
|---|---|
| Att'y Brusch: | First, we are moving for a not guilty verdict on Counts 1 and 2. A juror [said] that was not her independent verdict, juror number four, at the very least, we ask for a mistrial because it should be not guilty. The juror can be further polled. That juror can be polled |

more. She said no, it was not her independent verdict; hence, it was not a unanimous verdict, hence, it should be not guilty on 2 — both counts.

| | |
|---|---|
| Att'y Poole Davis: | Did she sign the verdict form? |
| The Court: | Yes. |
| Att'y Brusch: | We will respectfully request to have her voir dire. |
| Att'y Campbell: | We can ask that you accept the verdict based on the fact the juror signed the jury form which means guilty on both verdicts. |
| The Court: | The Court can question her further. |
| Att'y Brusch: | We respectfully disagree. Any further questioning will go to the province of the jury; it should be dismissed or not guilty and . . . a[t] least a mistrial on those two counts. |
| The Court: | With regards to the juror's indication, it was not her independent verdict. She looked confused. She was fidgeting around so I can question her without asking her as to what her thought processes are. I cannot go in the province of the jury, but I can question her and ask her if it's her independent verdict or not. |
| Att'y Brusch: | She answered no. She did not look confused to me. |
| The Court: | She is looking confused speaking to the other jurors. |
| Att'y Webster: | The fact she is speaking to other jurors is the problem. |
| The Court: | You don't know what they are saying. The other jurors are not talking to her. |
| Att'y Brusch: | It would be intimidation by the other jurors. |
| The Court: | I'm simply going to bring her in chambers and ask her one question and that's it. |
| Att'y Brusch: | I think that's intimidation. |
| The Court: | It is not intimidation. I will note your objection for the record. |

| | |
|---|---|
| | (Thereupon, the sidebar conference was concluded.) |
| The Court: | We will recess briefly, the jury may stay in court. |
| | (Thereupon, a discussion was held in chambers with the Court Reporter and juror number four.) |

(*Id.* at 45-47.)

While in chambers, the court attempted to ascertain whether Juror No. 4 agreed with the verdicts, even though when she was polled in open court she answered "no" to the question "are those your independent verdicts?" During the in-chamber proceedings, Juror No. 4 stated twice that she meant "not guilty" for the verdicts on counts one and two. When the trial court asked Juror No. 4 to clarify her statement, Juror No. 4 stated she agreed with the foreman's announcement of "guilty" on the two counts. However, Juror No. 4's statement of "guilty" was immediately preceded by her statement of "not guilty", thereby interjecting ambiguity and confusion into her responses. Again, the following transcript recorded the exchange among counsel, the trial court, and Juror No. 4 while in the court's chambers.

| | |
|---|---|
| The Court: | We only have one question to ask you and that is, whether or not you agree with the verdict. |
| The Juror: | I agreed with the two not guilty — the two counts |
| The Court: | I'm sorry? |
| The Juror: · | I agreed of the two counts that are not guilty. |
| The Court: | That's not guilty? |
| The Juror: | That's guilty. Number 1 and 2. |
| The Court: | You agree with Count 1 and 2. |
| The Juror: | Yes. |
| Att'y Brusch: | I have some arguments, Your honor. |
| The Court: | Thank you, very much. |
| The Juror: | I did not understand, that's why I said no, but now you tell me I understand now. |
| The Court: | Okay. |
| | (Thereupon, the juror was excused from chambers and the proceedings continued in chambers.) |

(*Id.* at 48.)

After Juror No. 4 was excused from the trial court's chambers, Ambrose renewed his motion for a mistrial, arguing that Juror No. 4's

332

in-chambers answers first affirmed her negative declaration in open court. Ambrose argued further that Juror No. 4 changed her mind only because of the "leading" nature of the trial court's questions. (Trial Tr. vol. vii, 49, Sept. 10, 2005.) In response, the People asserted that in addition to Juror No. 4's clarification during the in-chambers proceedings where she agreed with the guilty verdicts, Juror No. 4 had earlier signed the verdict forms indicating "guilty" on counts one and two of the information. The trial court accepted the verdicts and ruled as follows:

> The Court: The Court is going to accept the verdict. It is clear to the Court that she was confused when she was polled. So she did sign the verdict form and she was certain about Counts 1 and 2. The Court will accept that verdict and I will [address] post trial motions.

(*Id.* at 50.) After the in-chamber proceeding concluded, everyone returned to the courtroom. The trial court expressed the court's gratitude to the jurors for their service and discharged them. (*Id.*) Importantly, after the in-chamber proceeding, there were no additional polling of the jury and no further deliberation by the jury. Likewise, Ambrose did not request any additional polling of the jurors after resumption of the courtroom proceedings. Crucially, when Juror No. 4 returned to the courtroom from the in-chambers proceeding and joined the other jurors, she was never again asked the question "are those your independent verdicts?" The court proceedings concluded in the following manner:

> The Court: Members of the jury, once again, we thank you for your service in these cases. You are now discharged. We hope you have a pleasant weekend, what's left of it, anyway, and you are excused for the rest of this quarter. And excused means you can report if you wish to report, if you do not wish to report, you do not have to report. We thank you.
>
> The Marshall: Please rise.
>
> (Thereupon, the jury exited the courtroom at 5.00 p.m.)
>
> The Marshall: Court is adjourned.
>
> (Thereupon, the proceedings were concluded.)

(*Id.* at 55.)

Appellant's September 8, 2006 motion for a judgment of acquittal or alternatively for a new trial was denied after a December 11, 2006 hearing. On April 25, 2007, Ambrose was sentenced to five years of incarceration on count one and fifteen years of incarceration on count two, with both sentences to be served concurrently. The trial court also imposed a fine upon Ambrose in the amount of twenty five thousand dollars and assessed court costs of seventy-five dollars against him. These sentences were memorialized in a May 7, 2007 judgment.

## II. COURT'S JURISDICTION

Pursuant to title 4, section 32(a) of the Virgin Islands Code, we have "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Ambrose was convicted and sentenced in the the Superior Court. Therefore, this court has jurisdiction to adjudicate this appeal.

## III. STANDARD OF REVIEW

■ A "violation of Rule 31(d) is *per se* error requiring reversal of [Ambrose's] conviction." *V.I. v. Hercules*, 875 F.2d 414, 419 (3d Cir. 1989). When a case "involves the interpretation of the Constitution and the Federal Rules of Criminal Procedure, our review is plenary." *United States v. Toliver*, 330 F.3d 607, 610 (3d Cir. 2003).[6]

---

[6] The United States Constitution applies to the United States Virgin Islands through Section 3 of the Revised Organic Act of the Virgin Islands. *See* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1614, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding V.I. CODE ANN. Tit. 1). Although the Bill of Rights contained in the Organic Act is statutorily conferred by Congress, "it expresses the congressional intention to make the federal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory." *In re Brown*, 8 V.I. 313, 439 F.2d 47, 50 -51 (3d Cir. 1971). The right to a trial by jury is provided under section 26 of the Revised Organic Act of 1954. The Federal Rules of Criminal Procedure is applicable to criminal trials in the Superior Court of the Virgin Islands through Rule 7 of the Rules of the Superior Court of the Virgin Islands, which states that: "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith by . . . the Federal Rules of Criminal Procedure and the Federal Rules of Evidence."

## IV. THE ISSUE

The pivotal issue on appeal is whether the trial court erred by accepting two guilty verdicts when a juror dissented from the same verdicts during polling of the jury, and the court neither ordered the jury to further deliberate nor declared a mistrial and discharged the jury, but conducted an in-chamber proceeding with the dissenting juror regarding the dissenting juror's verdicts, outside the presence of the other jurors.

## V. DISCUSSION

The guilty verdicts in this case were not substantiated or validated in open court by a unanimous jury, because Juror No. 4 dissented. The trial court's in-chamber proceeding with Juror No. 4, in which she gave responses to different questions from the question that was posed to her during the jury poll, was an irrelevant and improper procedure for examining or considering the verdicts' lack of unanimity. We discuss more fully the reasons for these conclusions in three sections.

In section A, we discuss the interrelationship between the verdict and the jury poll, the sole test for a verdict's unanimity. In section B, we will discuss Federal Rule of Criminal Procedure 31(d)'s two mandated alternatives available to the trial court when a juror dissents during jury polling, which are to order further jury deliberation or to declare a mistrial and discharge the jury. In section C, we will explicate why the trial court's in-chamber proceeding with Juror No. 4, in which Juror No. 4 was asked improper questions that were not presented to the other jurors in open court during polling, cannot substitute for Juror No. 4 unequivocal "no" answer during polling in open court. Finally, in section D, we elucidate why the trial court erred in accepting verdicts that were less than unanimous.

### A. Verdicts Must be Unanimous When Tested by the Jury Poll

In both territorial and federal courts, unanimity of a jury is required for a valid verdict in a criminal trial. *See, e.g., Johnson v. Louisiana*, 406 U.S. 356, 363, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972) ("A jury in a federal court . . . operates under the unanimity rule"); *Andres v. United States*, 333 U.S. 740, 748, 68 S. Ct. 880, 92 L. Ed. 1055 (1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."); *United States v. Kemp*, 500 F.3d 257, 304 n. 26 (3d Cir. 2007) (noting "defendant's Sixth Amendment right to a unanimous jury verdict."). Rule 31(a) of the Federal Rule of Criminal Procedure

provides that a verdict must be declared in "open court" and must be "unanimous."

An "open court" is "[a] court session that the public is free to attend." BLACK'S LAW DICTIONARY 1123 (8th ed. 2004). In the context of this case, the open court is the courtroom in which the trial occurred, the verdict was announced, and the jurors were polled.[7] A jury poll, the process whereby each juror individually states whether the verdict announced by the foreperson is indeed that juror's independent verdict, is the *sole* method provided by the Federal Rules of Criminal Procedure for testing the unanimity of the jury verdict.[8] Rule 31 (d) provides for the jury poll:

> **(d) Jury Poll.** After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

Rule 31(d) has been adopted by the trial court as a court rule of procedure. *See* SUPER. CT. R. 7.

The purpose of polling is to ensure that the verdict was truly unanimous and not coerced. *See* FED. R. CRIM. P. 31 (Advisory Committee Notes 1998 Amend.) (citing *Humpheries v. D.C.*, 174 U.S. 190, 194, 19 S. Ct. 637, 43 L. Ed. 944 (1899)). Importantly, "where a poll is taken, the verdict becomes final . . . when the twelfth juror's assent to

---

[7] *See, e.g., In Ex parte Fisk*, 113 U.S. 713, 723, 5 S. Ct. 724, 28 L. Ed. 1117, 7 CIV. PROC. R. 169, 1 How. Pr. (n.s.) 432 (1885). In Fisk, the Supreme Court explained that where an examination in "open court" is required, there can be no substitute, including the use of depositions conducted by the same judge in open court but at another time. For example, "oral testimony" in "open court," according to the United States Supreme Court:

> This obviously means the production of the witness before the court at the time of the trial, and his oral examination then; and it does not mean proof by reading depositions, though those depositions may have been taken before a judge of the court, or even in open court, at some other time than during the trial.

*Id.*

[8] The jury poll has been a core feature of trials in the common law. The defendant's right to poll the jury, with "roots in the early common law," *United States v. Miller*, 59 F.3d 417, 419-20 (3d Cir. 1995) (quoting 2 Sir Mathew Hale, THE HISTORY OF THE PLEAS OF THE CROWN 299-300 (1st Am. Ed. 1847)), is "of ancient origin and basic importance." *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir. 1958).

that verdict is made on the record." *United States v. Marinari*, 32 F.3d 1209, 1213 (7th Cir. 1994). Therefore, "[i]f a juror says 'no' during the polling in open court, then the verdict is not entered. . . ." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 914 (9th Cir. 2000). *See, e.g., State v. Williams*, 99 Ohio St. 3d 493, 794 N.E.2d 27, 38 (2003) ("A verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered.") (quoting *United States v. White*, 972 F.2d 590, 595 (5th Cir. 1992)).

A verdict which fails the test of unanimity upon a poll of the jury is invalid and should not be accepted. FED. R. CIV. P. 31(d). *See, e.g., United States v. Lee*, 532 F.2d 911, 913 (3d Cir. 1976) ("A trial court may not accept a verdict if it is defective but must either direct the jury to retire for further deliberation or declare a mistrial."). After the in-chambers proceeding, the jurors were not re-polled in open court in the presence of each other, and never deliberated thereafter. Accordingly, the verdicts are not unanimous; therefore, they are illegal and a nullity. Additionally, caselaw precedent instructs that the polling procedure, like the announcement of the verdict, must be conducted in open court. *See, e.g., Marinari*, 32 F.3d at 1212 (A jury poll "is properly satisfied by asking each juror individually in open court to answer the question of whether or not the verdict announced was that juror's verdict."); *V. I. v. Hercules*, 875 F.2d 414, 419 (3d Cir. 1989) ("Jurors must be given an opportunity in open court to express their agreement or disagreement with the verdict.").

The trial court justified its acceptance of the less than unanimous verdict on the basis that Juror No. 4 signed the verdict forms. Significantly, a juror's signature on the verdict form cannot substitute for the jury poll in open court. *See id.* ("Reliance on verdict slips signed in the jury room is inadequate."); *Marinari*, 32 F.3d at 1212 ("However, we intend to leave no doubt now that each juror's signature on a verdict form — standing alone — cannot substitute for an oral poll of the jury in open court.").

Undeniably, the verdicts in this case are invalid because during polling Juror No. 4 responded "no" to the question of whether the verdicts were her independent verdicts. She never repudiated, in open court, her dissent from the guilty verdicts. Similarly, despite her apparently inconsistent responses during the in-chamber proceedings, Juror No. 4

never unequivocally recanted her "no" answer to the precise question posed to her by the clerk during polling. In the next section, we discuss the only two options that Federal Rule 31(d) afforded the trial court following Juror No. 4's response during polling.

## B. The Court Should Have Ordered Further Deliberation or Declared a Mistrial and Discharged the Jury

 Federal Rule of Criminal Procedure 31(d)'s instructions are unambiguous. The Rule provides that: "if the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." Therefore, because the Ambrose verdicts were not unanimous when Juror No. 4 dissented, the court rules instructed the trial court to either order further jury deliberations or to declare a mistrial and discharge the jurors. The appellate court in *United States v. Scalzitti*, 578 F.2d 507, 512 (3d Cir. 1978), opined that "Rule 31(d) does not provide for the third option of acceptance of the non-unanimous verdict." *See also United States v. Aimone*, 715 F.2d 822, 832 (3d Cir. 1983) ("The choice" whether to order continued deliberation or to discharge the jury, "is a matter within the discretion of the trial judge, even if a motion for mistrial is made.").

 By disregarding Federal Rule of Criminal Procedure Rule 31 (d)'s trenchant and concise instruction which is supported by overwhelming caselaw precedent, the trial court accepted less than unanimous verdicts. In doing so, the trial court perpetuated a nullity.[9] Next, we discuss why, even if it was possible for us to supplant Juror No. 4's in court declaration, and it is not, we cannot do so in this case. Additionally, we cannot over

---

[9] "The validity of a verdict is put in jeopardy when a juror gives an equivocal, ambiguous, inconsistent, or evasive answer. Similar concerns arise when the juror's assent is reluctant or conditional." Karl Moltzen, *The Jury Poll And A Dissenting Juror: When a Juror in a Criminal Trial Disavows Their Verdict in Open Court*, 35 J. MARSHALL L. REV. 45, 55 (2001). *See generally*, M. J. Greene, Annotation, *Juror's Reluctant, Equivocal, or Conditional Assent to Verdict, on Polling, as Ground for Mistrial or New Trial in Criminal Case*, 25 A.L.R. 3D 1149 (1969). Therefore, under circumstance such as a juror's ambiguous answer, a trial court may question a jury to clarify the juror's answer during a jury poll. However, such a post-verdict contact between the trial court and a juror is "strongly disfavored and severely restricted." *United States v. Aimone*, 715 F.2d 822, 833 (3d Cir. 1989). Importantly, those circumstances are obviously absent in this case, because Juror No. 4's answer was an unequivocal, clear, and unmistakable "no" stated in open court to the question of whether the verdict was her independent verdict. Accordingly this case does not involve circumstances requiring any follow-up questioning.

emphasize that there is no substitute for Rule 31(d)'s explicit pronouncements.

## C. The In-Chambers Proceeding was Entirely Superfluous

 The entire in-chambers proceeding of the trial court was superfluous because the trial court violated Rule 31(d) by not subsequently declaring a mistrial or ordering further deliberations. Nevertheless, even if it were possible for us to take into account the trial court's in chamber proceedings, we would nonetheless reject the verdicts for the following reasons.

First, when the jurors were polled in open court, the Superior Court clerk succinctly asked each juror: "are those your independent verdicts?" However, the trial court asked Juror No. 4 during the in-chambers "whether or not [she] agree[d] with the verdict."[10] Because during the polling of the jury and during the in-chambers interview, different questions were asked of Juror No. 4, her answers to either questioning could not be substituted as her answers to the other questioning.[11]

Second, because of Rule 31, Juror No. 4's answers to the trial court's questions during the in-chambers interview could not supersede her "no" vote during polling. Therefore, it did not matter whether Juror No. 4 agreed or disagreed with the jury verdicts, during the in-chambers interview. *See, e.g., Dixon Stave & Heading Co. v. Archer*, 40 Tenn. App. 327, 291 S.W.2d 603, 609 (Tenn. App. 1956); *see also State v. Austin*, 6

---

[10] In *Hercules*, the Third Circuit reviewed a statement made by a trial court that "I do not have jurors polled by asking, is that your verdict." *Id*. "We are troubled by the trial judge's statement," wrote the appellate court. The Third Circuit further noted that the trial judge's statement "is inconsistent with the ABA's recommendation contained in section 5.5 of the ABA Standards Relating to Trial by Jury. . . ." *Id*. The Third Circuit then quoted the ABA standards which state that: " '[t]he poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his verdict.' " *Id*. After observing that another federal court of appeals had also endorsed the ABA Standards Relating to Trial by Jury, the Third Circuit concluded that "this method is the most desirable." *Id*. In this case, the trial court did not ask Juror No. 4 "are those your independent verdicts?" Therefore, the in-chamber proceedings did not meet the ABA standards for jury polling adopted by *Hercules*, and therefore, could not be used to substitute for Juror No. 4's open court declaration.

[11] Prior to the in-chambers proceeding, on Juror No. 4's dissent and what the court would do to seek clarification, the trial court stated that: "I can question her and ask her if it's her independent verdict or not." (Trial Tr. vol. vii, 46-47.) Ultimately, however, the court posed different questions to Juror No. 4.

Wis. 205, 207 (1858) (a juror's statement that he subscribed verdict not responsive to the question of whether the verdict is his independent verdict.).

Third, it is noteworthy and critical that during the in-chambers proceedings Juror No. 4 first said "not guilty" on the two counts but on the next question said "guilty" to allegedly the first question. Therefore, the incongruity of Juror No. 4's responses nullified the purpose of the in-chamber proceeding. A defendant's liberty and freedom should not hinge on such flawed verdicts, when a conveniently accurate procedure exists, to resolve less than unanimous verdicts, such as further jury deliberation or declaring a mistrial and discharging the jury.

Fourth, as we have already discussed, Juror No. 4's in-chambers declarations were not made nor confirmed in "open court." Because the result of a verdict's unanimity is required to be announced in open court, Juror No. 4's in-chamber declarations cannot nullify or obfuscate her declaration in open court.

Fifth, the trial court erroneously relied on Juror No. 4's signing of the verdict form to justify accepting the less than unanimous verdict. However, we noted that it is established precedent that the signing of the verdict form is not a substitute for the oral responses during jury polling in open court. *See supra* Section V (A).

Ambrose further complains that Juror No. 4's in-chambers answers were the result of coercion. Because we conclude that the entire in-chambers proceeding was superfluous due to the trial court's violation of Federal Rule of Criminal Procedure Rule 31(d), and will reverse the convictions, it is unnecessary for us to evaluate or excogitate Ambrose's other claims.

Sixth, this imbroglio would have been averted had the jurors being re-polled in open court as recommended by the Advisory Committee Notes to the 1998 Amendments to Federal Rules of Criminal Procedure Rule 31(d).[12] In the next section, we discuss the consequences of the court's acceptance of the less than unanimous verdict.

---

[12] The notes to the 1998 amendments provide that:

The committee is persuaded by the authorities and practice that there are advantages of conducting an individual poll of jurors. Thus the rule requires that the jurors be polled individually when a poll is requested, or when polling is directed sua sponte by the court. The amendment, however, leaves to the court the discretion as to whether to conduct a

## D. Accepting Verdicts that Lacked Unanimity Violated Ambrose's Rights

 Excluding the proceedings inside the court's chambers, this case is similar to the trial court's acceptance of a less than unanimous verdict in *United States v. Scalzitti*, 578 F.2d 507, 510 (3d Cir. 1978). In *Scalzitti*, the jury convicted three defendants by verdicts of eleven to one on various counts. *Id.* The trial court accepted the verdict. *Id.* The United States Court of Appeals for the Third Circuit ruled that the trial court erred, explaining that "[u]nanimity serves to effectuate the purpose of the jury system by promoting the full expression of the views of all members of the jury and by insuring that those views are taken into account as fully and fairly as possible in reaching a verdict." *Id.* at 512.

> Thereafter, the *Scalzitti* court concluded, and we agree, that
> The unanimous verdict requirement, with its deep roots in [our] jurisprudence and its clear expression in the unequivocal command of Rule 31(a), should be observed in every trial of a crime in [a] court. As such, we conclude that unanimous verdicts are required without regard to any attempts by any of the parties to dispense with this requirement.

*Id. See also United States v. Kemp*, 500 F.3d 257, 304 n. 26 (3d Cir. 2007) (noting a "defendant's Sixth Amendment right to a unanimous jury verdict."); *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) ("a verdict rendered by a less-than-unanimous jury violates a defendant's Sixth Amendment rights by a harm that arises from the trial itself.").

 In this case, the trial court accepted a verdict that is less than unanimous. In doing so, the trial court violated not only the Constitutional Rights of Ambrose but also violated the clear commands of Federal Rules of Criminal Procedure 31(a) and (d). A violation of Rule 31(d) is a *per se* error requiring reversal. *Hercules*, 875 F.2d 414, 419. Accordingly, the trial court's judgment will be reversed and the case remanded to the Superior Court for a new trial.

## VI. CONCLUSION

The judgment of the Superior Court of the Virgin Islands will be reversed and the case remanded to the Superior Court for a new trial.

---

separate poll for each defendant, each count of the indictment or complaint, or on other issues.